481 So.2d 492 (1985)
The STATE of Florida, Appellant,
v.
Robert WASKIN, Appellee.
No. 84-2474.
District Court of Appeal of Florida, Third District.
December 3, 1985.
*493 Jim Smith, Atty. Gen., and Calianne P. Lantz, Asst. Atty. Gen., for appellant.
Jerrell A. Breslin, Miami, for appellee.
Before SCHWARTZ, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal by the State from an order dismissing an information which charged the defendant with soliciting one Tom Tretola, an undercover police officer believed by the defendant to be a hitman, to murder the defendant's ex-wife.[1] The trial court concluded from the undisputed facts (consisting primarily of the taped conversation between the defendant and the prospective "hitman") that, although the defendant discussed the possibility of having his ex-wife killed, he and the undercover officer "never came to an agreement about the murder of the defendant's ex-wife ... and agreed only to meet again with the undercover officer for further discussions at an unspecified time in as many as five months from the time of the conversation." Contrary to the trial court, we find that the facts before it establish a prima facie case of the defendant's guilt of the crime of solicitation, whether or not it is deemed that an agreement was reached. Accordingly, we reverse the order under review and remand the case for trial.
Section 777.04(2), Florida Statutes (1983), under which the defendant was charged, provides in pertinent part:
"Whoever solicits another to commit an offense prohibited by law and in the course of such solicitation commands, encourages, hires, or requests another person to engage in specific conduct which would constitute such offense or an attempt to commit such an offense commits the offense of criminal solicitation... ." (emphasis supplied).
It is well settled that "[f]or the crime of solicitation to be completed, it is only necessary that the actor, with the intent that another person commit a crime, have enticed, advised, incited, or ordered or otherwise encouraged that person to commit a crime. The crime solicited need not be committed." W. LaFave & A. Scott, Handbook on Criminal Law § 58, at 414 (1972). This is so because the laws against solicitation are "concerned not only with the prevention of the harm that would result should the inducements prove successful, but with protecting inhabitants of this *494 state from being exposed to inducements to commit or join in the commission of the crime specified... ." Miller v. State, 430 So.2d 611, 614 (Fla. 4th DCA 1983) (quoting People v. Burt, 45 Cal.2d 311, 313, 288 P.2d 503, 505 (1955)). Thus, it is said that "[t]he gist of criminal solicitation is enticement... ."[2]Hutchinson v. State, 315 So.2d 546, 548 (Fla. 2d DCA 1975) (distinguishing between an attempt and solicitation).
With this as our backdrop, we turn to the facts of the present case.
As a result of some preliminary telephone conversations, the defendant met with Tretola late one evening in Tretola's car in the rear parking lot of a Miami motel. Their meeting was observed by a surveillance team of other police officers and their conversation recorded on tape. We here recount the pertinent portions of the conversation between them:
"[Tretola]  Dr. Waskin, I presume?
"[Defendant]  Yes sir
"[Tretola]  Why don't you get into my car so we can talk? Okay?
"[Tretola]  How you doing? My name is Mr. T. How are you?
... .
"[Tretola]  And, you know, you mentioned something about price and I cut you off because I don't talk business on the phone and ah, I just know you have a problem.
"[Defendant]  Right
"[Tretola]  And right now you tell me what your problem is and I can judge my price. Is that fair and square, or?
"[Defendant]  Oh yea. The problem is my ex-wife.
"[Tretola]  They are problems.
"[Defendant]  Ah. She caused a lot of aggravation. I'm just trying to find some way to solve this problem.
"[Tretola]  That's my business.
"[Defendant]  Ah, nobody can hear. [At this time, the Doctor is checking the back seat of the vehicle.]
"[Tretola]  Nobody can hear
"[Defendant]  But you know I, the biggest problem, you know, money. My two oldest children live with her (inaudible)
"[Tretola]  Yea
"[Defendant]  But ah, the biggest problem right now is something, you know, can't be linked to me.
"[Tretola]  It can't be linked to you. Well
...
"[Defendant]  We've been in and out of court umpteen times, it cost me a fortune.
"[Tretola]  You ah, I assume you, that you want the permanent?
"[Defendant]  Yea. Anything else wouldn't ...
"[Tretola]  Solve the problem.
"[Defendant]  Wouldn't do
... .
"[Tretola]  Ah, you want it like an accident or what? You know?
"[Defendant]  What if (inaudible), what it
...
"[Tretola]  Well down here it's kind of hard, cause you know, car accidents, you know, you can f____ around with a brake line, something like that, but there's not many hills down here.
"[Defendant]  Right
"[Tretola]  And the job isn't, isn't ah . .
"[Defendant]  And another problem, she takes the kids to school and ...
"[Tretola]  It gets kind of dangerous, you know, I don't want to ah ... There's other ways, you know.
"[Defendant]  Right
"[Tretola]  That's no problem
... .
"[Tretola]  You said that you wanted it like an accident . . ah
*495 "[Defendant]  Something, you know, anything that, you know
"[Tretola]  Well, people, every day people get mugged on the street.
"[Defendant]  Certainly
"[Tretola]  And get robbed and ...
"[Defendant]  Certainly anything like that
"[Tretola]  And the guy get carried away with the robber, and ...
"[Defendant]  If that's, you know
"[Tretola]  Before you know it, the guy, you know, the person, ah, is dead. You know. The only problem is I have to start checking her out and I need some information.
... .
"[Defendant]  OK, what you're saying now, you have to know where she (inaudible)
"[Tretola]  You want to talk economics, I believe?
"[Defendant]  Yea. Your price ...
"[Tretola]  I understand, I know what you're saying. It's a business. I'm in the business and you're in a business. OK? What you been telling me, it doesn't appear too hard. Ah, just by what you're telling me, you know, that she, that she goes out a lot on off weekends, when ...
... .
"[Defendant]  The problem is getting money, how, when
"[Tretola]  Well that's, that's
"[Defendant]  I can, you know, I can go to the bank and borrow it. I pay you (inaudible) I've got it in cash then I can just go where nobody knows about (inaudible). I just have things (inaudible) in cash for a while. Right now I'm working in tight. A friend of ours that I loaned twenty thousand dollars for his business and it's just down the drain
... .
"[Defendant]  Yes. I loaned him twenty thousand dollars, and I got a loan out from my bank to pay it back. Unfortunately, I'm still paying that. Now trying to work that out . .
"[Tretola]  Would do you, what kind of figure are you looking at? We'll put it this way, Doc, what's it worth to you?
"[Defendant]  He mentioned ... now I know that
"[Tretola]  Like I said, no one mentioned any figures, Doc. I don't know where the f____
"[Defendant]  He mentioned, he said twenty, now ...
"[Tretola]  Twenty is for a pretty hard hit, you know, where I got to, where the guy is important, something where it will be a stink, I got to leave town right away, you know, something like that. You know what I mean? Ah, I could probably cut that in half.
"[Defendant]  That wouldn't be any problem, it's just a matter of getting it. And how much in advance, how much ...
"[Tretola]  I think ten thousand would be a
"[Defendant]  The other problem is how would you want it?
"[Tretola]  Work out the mechanics
... .
"[Defendant]  Right
"[Tretola]  Yea. I usually ...
"[Defendant]  I can't get cash. I can't get cash. I can go to the bank and get it, but I, you know, that wouldn't be a good idea right now.
"[Tretola]  I usually like to have at least ten percent up front.
"[Defendant]  Up front.
"[Tretola]  For my expenses. Ah . .
"[Defendant]  OK then ...
"[Tretola]  That would be a thousand
"[Defendant]  Yea. That's no problem, but I mean, timewise, as far as you know
...
"[Tretola]  Well
"[Defendant]  Two weeks, when the
*496 "[Tretola]  I'll tell you what I can, right now I'll be, I'm talking now that, that everything that you told me she does
"[Defendant]  Right
"[Tretola]  All right. I would need naturally the name,
"[Defendant]  Right
"[Tretola]  Her address
"[Defendant]  Address
"[Tretola]  Type of car she has
"[Defendant]  License plate
"[Tretola]  License plate and a photograph. Can you get me that stuff?
"[Defendant]  Photograph (inaudible) yea from her Senior Prom twelve years ago.
... .
"[Defendant]  Now the only other questions is, once you set to do it, you need the money before you do it or right after you do it.
"[Tretola]  Well, when I do it, when it happens, Doc, you're going to be the first one to know.
"[Defendant]  Right. I'm sure (inaudible) call (inaudible) because I'll take the kids back. The day I take the kids back they're going to be calling me wherever I'm at, they'll know ...
"[Tretola]  You'll be the first one to know.
"[Defendant]  I always tell her and she tells the parents. I'm sure that, Tampa the convention, the hotel, wherever we're staying.
"[Tretola]  Well, when you go ...
"[Defendant]  They're going to be looking for me
"[Tretola]  I'm looking at probably the weekend you're out of town
"[Defendant]  Right
"[Tretola]  You said two weekends, right? You're going someplace, right?
"[Defendant]  Tampa
"[Tretola]  All right, you ah, do you know where you will be staying at?
"[Defendant]  Yea. Tampa Hilton, or whatever it is, it's the new one downtown. I got it written down in my office.
"[Tretola]  All right. When the job is done, I'll give you a call, I'll say, `Doc, the contract is taken care of'. Something like that.
"[Defendant]  Now, I can't get the money
...
"[Tretola]  I know, I know that, hear me out. That will give you a chance to get your thoughts together, because when you hit town, there will be a lot of s____, a lot of questions being asked.
"[Defendant]  Right
"[Tretola]  So this way you'll know what to say, there will be no problem. Then, I'll contact you. I'll give you a call at your office. I'll say, Mr. T. and I'll leave a phone number for you to call. For you to call me back, and then we will discuss where to meet and the rest of the balance, and that's it.
"[Defendant]  What I'd rather do is wait like when you're in town again. I know, I know, I don't want to put you off like this
"[Tretola]  I don't know when I'll be back in ...
"[Defendant]  I don't want
"[Tretola]  My business takes me out ...
"[Defendant]  I know that
"[Tretola]  And this is, I'm in some type of a lull here, where, you know, I could use the extra cash, you know
"[Defendant]  Right. Yea. Unfortunately your week to do this is not easy. And I'd rather, I would rather, you know, say you're coming in to town four or five months from now, I can always arrange to go away. If I know a month in advance, two weeks in advance, we can go away to Disney World, two weeks (inaudible). I can arrange to be away anytime, it's not unusual.
"[Tretola]  Are you looking at Thanksgiving?
*497 "[Defendant]  Thanksgiving, Christmas, you know, I mean if you have some idea, I mean ...
"[Tretola]  Well, like I said ... if you can give me a definite time frame, or like a ball park time frame, I can make it my business to, you, what I'll do, I'll stay in town for about a week, ten days. All right? I'll scope it out and then Thanksgiving, when I come back in, I'll know all her habits and everything else. And it will be much easier for me.
"[Defendant]  You would still need a thousand now anyway
"[Tretola]  Thousand up front, right. Is that, is that putting
"[Defendant]  Right now, ah, right now yea
"[Tretola]  Putting, ah ...
"[Defendant]  Today
"[Tretola]  Putting a turn on you?
"[Defendant]  Well, I mean, I can come up with (inaudible), I ain't got it available. OK, not that I have to write a check or cash somewhere to get it right now. That's why I would rather wait ...
"[Tretola]  Until Thanksgiving
"[Defendant]  Thanksgiving, Christmas. (inaudible) settle I can work out (inaudible) to pay you in cash, (inaudible). I know you, you got work to do, but what I've been through, I don't want to see the inside of jail. Anywhere
"[Tretola]  I can't see how, if you're away, there's no way
"[Defendant]  Right, but I'd rather (inaudible) put the cash away, now I save a few dollars, you know and I put it away, four months from, I can have all the cash put away. Nobody would ever know. I don't have to ask anybody for it, right now, I don't mention anything to anybody anymore. I think I'd rather do that.
"[Tretola]  Anything you want, Doc, you know.
"[Defendant]  I mean, at this point, just, you know where to ...
"[Tretola]  I know where to contact you.
"[Defendant]  Contact me around, oh anytime, in fact, even after the holidays, we go away. If you come in town in January and the holiday is over, Christmas week, we don't [go] away, it's too crowded. January we go away. I can arrange, I can find a convention somewhere to go to, you know.
"[Tretola]  All right, then I'll arrange my schedule where I, then, I should be back in town around the end of the month. October.
"[Defendant]  The end of October.
"[Tretola]  No, around the end of, the first of October, somewhere around there.
"[Defendant]  OK
"[Tretola]  I'll give you a call
"[Defendant]  OK, and then we will... .
"[Tretola]  And then I'll see how your (inaudible)
"[Defendant]  I have meetings on the first and second Tuesday nights of each month. At the hospital. I get away and I don't have to be home until after eleven. So those are the two . .
"[Tretola]  Let me ask you a question, is the thousand up front bothering you?
"[Defendant]  No, no, no, just getting it right now, it's just
"[Tretola]  All right
"[Defendant]  Like today ...
"[Tretola]  As long as I know where you stand. You know, I mean
"[Defendant]  No, that's no problem
"[Tretola]  OK, and I'll give you a call. I should be back in town around the first of October, towards the end of the month.
... .
"[Defendant]  And then you can work it out and then four or five months from now we'll take care of it and then I can have the rest of it."
... .
No authority suggests, and most assuredly Section 777.04(2), Florida Statutes, does not require, that a defendant charged with solicitation must command, encourage, *498 hire or request another person to engage in specific conduct at some specific time. The conversation between the defendant and Tretola in the present case is, at the very least, susceptible of being understood by reasonable fact-finders as meaning that the defendant requested or encouraged, if not actually hired, Tretola to murder the ex-Mrs. Waskin. The fact that the time of performance was not agreed upon or even that it was postponed for several months, or that payment of money was not immediately made, does not mean that no request or encouragement occurred, or even that no agreement  hiring  had taken place. See People v. Rubin, 96 Cal. App.3d 968, 158 Cal. Rptr. 488 (1979), cert. denied, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980) (a deadly serious offer to pay a reward to anyone who "kills, maims, or seriously injures a member of the American Nazi Party" at the time of the Nazi march in Skokie five weeks away constitutes solicitation). Indeed, it appears that the defendant's request to postpone the hit was not occasioned by any disagreement about the figure of $10,000, but rather was motivated by the defendant's professed need to have sufficient time to amass the cash for payment without calling attention to his plan by borrowing. Where, as here, the defendant clearly requested that Tretola do away with his ex-wife, neither the lack of agreement about the price, or lack of payment, makes any difference. Thus, in Gardner v. State, 286 Md. 520, 408 A.2d 1317 (1979), the defendant, a hitman hired to kill X and Y, subcontracted the hit on Y and told the subcontract killer that he would have to kill Y only if eliminating X did not attain the desired goal, but that, in any event, the subcontractor would be paid whether or not he had to go ahead with the murder of Y. Fortunately for Y, the defendant never directed the subcontractor to murder Y, and in fact never paid the subcontractor. The defendant argued that he did not commit solicitation, since he never gave the subcontractor the directions to murder Y and did not pay the subcontractor as promised. Rejecting this argument, the court concluded that because the defendant "made a clear request" that Y be killed, the defendant committed solicitation. Id. at 529, 408 A.2d at 1322. The court explained:
"What [the defendant] fails to take into account is that the crime of solicitation was committed when he asked [the subcontractor] to commit the murder. Neither a final direction to proceed nor fulfillment of conditions precedent (payment of the money) was required. The gist of this offense is incitement." Id. at 529, 408 A.2d at 1322 (emphasis supplied).
See also People v. Bottger, 142 Cal. App.3d 974, 191 Cal. Rptr. 408 (1983) (defendant guilty of solicitation by asking hitman to commit murder in exchange for money, chance to take "hit's" property, and life insurance proceeds from would-be hit). Accord State v. Furr, 292 N.C. 711, 235 S.E.2d 193 (1977) (defendant guilty of solicitation by asking one person to solicit another to commit a murder).
The defendant argues, as he did below, that he went no further than the defendant in State v. Gaines, 431 So.2d 736 (Fla. 4th DCA 1983), against whom a solicitation charge was held to have been properly dismissed. Without endorsing the holding in Gaines,[3] we note that there, as the court itself pointed out, the defendant saved herself from prosecution, "not by saying that the act would take place some months in the future  but by making it plain that she would make her decision at that time *499 whether the `hit man' (in reality the undercover detective) should proceed." Id. at 737. Because, in the present case, the conversation between the defendant and Tretola does not plainly indicate that it was the decision rather than the act which was being put off to some later date, dismissal, even assuming the correctness of Gaines, was unwarranted.
Reversed and remanded.
NOTES
[1] Subsequent to his arrest, Waskin gave a statement to the police in which he admitted that he sought out and met with Tretola, firmly believing Tretola to be a professional hitman. Waskin's admitted purpose was to have the hitman take care of a problem he was having with his ex-wife, namely, "she continually aggravates me and causes me extreme monetary problems."
[2] It follows, of course, that the crime of solicitation is committed even though the person solicited (such as an undercover officer) would never have acquiesced to the scheme set forth by the defendant. Jones v. State, 466 So.2d 293 (Fla. 3d DCA 1985).
[3] Without setting out in its opinion any of the hit-related conversation, the Gaines court affirmed the dismissal of the solicitation charge, holding that the conversation could only be interpreted as indicating that at the time of the alleged solicitation, Gaines had not decided that she wanted the hit to occur, and thus, as a matter of law, was not guilty of solicitation. We have great difficulty imagining a conversation which is subject only to this single interpretation and believe that in most cases the question of whether the defendant had decided to have the crime committed is uniquely one for the jury to resolve based on all the evidence, some of which may reveal that the words used by the defendant to show that he or she had not yet decided to solicit cannot be taken at face value.