645 So.2d 438 (1994)
THE FLORIDA BAR, Complainant,
v.
Stanley E. MARABLE, Respondent.
No. 82014.
Supreme Court of Florida.
November 23, 1994.
*439 *440 John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and David R. Ristoff, Branch Staff
*440 Counsel, Tampa, for complainant.
Jack McGill, Law Offices of R. Jackson McGill, P.A., Sarasota, for respondent.
PER CURIAM.
This disciplinary proceeding brought by The Florida Bar against attorney Stanley E. Marable is before the Court for review of the referee's report. Both parties seek review of the report. We have jurisdiction under article V, section 15 of the Florida Constitution.
Marable represented Eugene Matthews, who filed a lawsuit against the sheriff and certain sheriff's deputies in Manatee County alleging false arrest and violation of civil rights. After the suit was filed, the sheriff received an anonymous telephone call advising him that he would receive an extortionate demand for settlement of the Matthews suit and that the demand would threaten publication of a photograph of the sheriff in a compromising pose.
At about the same time, Marable's client, Matthews, told Marable that a private investigator named Frank Lanzillo might have information about the activities of the sheriff's office that might be helpful in connection with Matthews' suit. Marable made inquiries, learned the name of the investigator, and made contact with him. At their first meeting, Lanzillo explained that he had the capability, by means of a "scanner," to listen to conversations among various law enforcement officers, conducted over radios and cellular telephones. Marable thought Lanzillo might have intercepted conversations that would shed light on the activities of the officers who had arrested his client. It was agreed that Lanzillo would review his tapes with a view toward identifying any useful information. Believing that Lanzillo, like Matthews, had an interest in investigating law enforcement activities, Marable asked Lanzillo whether he had ever seen a photograph purporting to depict the sheriff unclothed from the waist down. Lanzillo replied that he had not, and Marable then removed a photograph from a drawer and showed it to Lanzillo. According to Lanzillo's testimony, the photograph appeared to depict the sheriff unclothed from the waist down. Marable testified that he showed the picture to Lanzillo in the hope of finding out the circumstances under which it was taken.
Lanzillo promptly reported to the sheriff's office about the photograph Marable had shown him. Together with the prior incident of the anonymous telephone call regarding the extortion attempt, the information about the photograph prompted the sheriff's office, in cooperation with the state attorney's office, to launch an investigation. Lanzillo agreed to cooperate and was equipped with a transmitter and other equipment for recording his numerous subsequent conversations with Marable. Eventually he also made contact with Matthews and had several conversations, some of which were recorded.
In a series of conversations, Lanzillo portrayed himself as having as strong personal animus against the sheriff based on past grievances. He said he had hundreds of tapes of conversations, some of them indicating questionable activities. He asked Marable if he was interested in obtaining information damaging to the sheriff, and discussed examples of items he had intercepted. On one occasion, Lanzillo, with the help of the sheriff's office, created a recording of a staged conversation about sensational activities on the part of the sheriff and his deputies. This apparently was designed to attract Marable or Matthews into attempting to observe or eavesdrop on the supposed activities. In each instance, Marable advised Lanzillo that he was only interested in information with relevance to or some use in his pending case. Lanzillo agreed to conduct further review of his tapes with that in mind.
*441 Lanzillo asked Marable if he had any more pictures of the sheriff. Marable said he did not, but that he had heard that someone had photographed the sheriff in attendance at a gathering at which illegal drugs were used. Thereafter, Lanzillo asked Marable on several occasions whether he had heard anything further about the supposed picture. Marable told Lanzillo that he had heard the picture "was going to surface."
One of the fabricated scenarios used by the sheriff's office and Lanzillo was not calculated to determine whether Marable would resort to illegal means to obtain damaging information about the sheriff or make illegal use of such information. It appears to have been calculated purely to provoke some kind of hostile reaction. Two high-ranking sheriff's deputies staged a conversation in which they discussed having intentionally withheld a document from pre-trial discovery in the civil suit on the pretext of a clerical error. Lanzillo presented the tape recording of the conversation to Marable as one he had recorded from the air waves. Lanzillo also secretly recorded the meeting at which he displayed the recording to Marable. The tape reveals that Marable was surprised and perplexed that the deputies would engage in such behavior. Marable agreed that he would keep the source of the taped conversation confidential.
At the same meeting, after the playing of the fabricated recording, Lanzillo asked whether Marable had any further information about the supposed photographs of the sheriff taking part in illegal drug use. Marable replied that he had heard the photographs were in the possession of a certain county employee. The referee's report found that Marable said, "She's got them. Get her address, you can break in there and steal them." Lanzillo responded, "Oh, I'd never do anything like that... . Everything's above board." Marable replied, "The end justifies the means." Two days later, Lanzillo arranged to meet with Marable again and brought up the subject of a break-in to obtain the supposed photographs. Lanzillo pretended to have obtained information about the location and to have hired someone to do the job. Marable pointed out that any such photographs would be of no use to him in connection with his pending litigation, but indicated that other persons would be interested in obtaining possession of any such photographs in an effort to discredit the sheriff in order to bring about his ouster from office. Marable told Lanzillo, however, that he was not serious about a break-in, that Lanzillo should not arrange it "on my account," and that he would not pay for the fruits of a break-in. But he also said that it would be "interesting" to see such photos and that they would be worth a lot of money to some other people.
Five weeks later, Lanzillo called Marable by telephone and told him that he had obtained some photographic negatives by means of a burglary. No burglary had actually taken place. Marable asked that the negatives be sent or brought to his office anonymously. Soon afterwards, Marable called his client Matthews and told him about the call from Lanzillo. Matthews contacted Lanzillo saying Marable had told him to call because Lanzillo had "something I need." The testimony and other evidence show that Marable believed Lanzillo had obtained materials damaging to the sheriff by means of a burglary and arranged to have Matthews inquire about and receive the materials. The negative Lanzillo subsequently offered to Matthews was created by means of a staged photograph.
The referee recommended that Marable be found guilty of violating Rule of Discipline 3-4.3 (misconduct by unlawful act or by act contrary to honesty and justice), and Rules of Professional Conduct 4-8.4(a) (violation of rules of conduct through acts of another), 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-8.4(d) (conduct prejudicial to the administration of justice) of the Rules Regulating The Florida Bar. The referee concluded that when Marable said to Lanzillo, "She's got them. Get her address, you can break in there and steal them," Marable committed the criminal offense of solicitation. The referee's report states: "There is clear and convincing evidence that Respondent encouraged Mr. Lanzillo to commit a burglary to obtain photos of Sheriff Wells using drugs."
*442 The referee concluded that Marable's conduct of encouraging a criminal act warranted disbarment but found that Marable's unblemished prior record was a mitigating factor. The referee recommended that Marable be suspended from the practice of law for one year. Marable contests the findings and recommendation. The Florida Bar also challenges the referee's report, arguing that proof of a criminal act calls for disbarment.
Marable argues that the referee's report is not supported by the evidence. He asserts that he was not serious in making the comment and that he later clearly told Lanzillo that he was not serious about a break-in, that he would not pay for the fruits of a break-in, and that Lanzillo should not commit a burglary "on my account." He points out that after the conversation with Lanzillo in which Lanzillo stated that the break-in would take place the following weekend, Marable did not attempt to contact Lanzillo. His next contact with Lanzillo was nearly five weeks later when Lanzillo contracted him. If he had intended that Lanzillo carry out a burglary, Marable argues, he would have initiated contact, and much sooner, to inquire as to the outcome. Based on these facts, Marable argues that the referee's finding that the crime of solicitation was committed is not supported by "clear and convincing evidence" and therefore must be rejected.
In a disciplinary proceeding before a referee, the Bar has the burden of proving the allegations of misconduct by clear and convincing evidence.[1] However, on review of a referee's findings of fact, this Court presumes the findings to be correct.[2] A referee's findings of fact should be upheld unless clearly erroneous or lacking in evidentiary support.[3] Because the referee is in the better position to evaluate the demeanor and credibility of the witnesses, the referee's findings of fact should be upheld if they are supported by competent, substantial evidence.[4] On review, this Court neither reweighs the evidence in the record nor substitutes its judgment for that of the referee so long as there is competent, substantial evidence in the record to support the referee's findings.[5] This is the standard of sufficiency of evidence that we will apply on review.
The referee found that the comments about breaking in, which he heard on tape, were made in a serious tone. This fact, together with Marable's several comments about the supposed location of the materials and his subsequent conduct in arranging to have Matthews contact Lanzillo to see the photos, are cited by the referee as reasons to reject Marable's testimony that he had no intention that Lanzillo should commit a burglary. The referee acknowledged that Marable told Lanzillo, two days after the break-in comment, that he was not serious in making the comment.
The elements of criminal solicitation are (1) commanding, hiring, requesting, or encouraging another person to commit a crime and (2) the intent that the other person commit the crime.[6] No agreement is needed, and the fact that the person solicited has no intention of committing the crime is irrelevant as long as the command, request, or encouragement is made with the requisite intent.[7] Marable's comment can be construed *443 as an encouragement or request, but the proof of his intent requires something more. In some cases the actual words of request or the circumstances of the solicitation itself may be sufficient information from which to infer intent.[8] However, the proof of intent here depends upon additional circumstantial evidence. Circumstantial evidence is often used to prove intent and is often the only available evidence of a person's mental state. However, in order to be legally sufficient evidence of guilt, circumstantial evidence must be inconsistent with any reasonable hypothesis of innocence.[9]
In determining not to believe Marable's account of these events, the referee emphasized the tone of voice on the tape and Marable's subsequent behavior in having Matthews obtain the material from Lanzillo. However, one's tone of voice does not always reveal one's state of mind. "Kidding" is sometimes done in the "deadpan" style. Deference to the trier of fact's direct observation of a witness's demeanor is less compelling when a tape-recorded voice is being judged rather than live testimony. Marable's conduct five weeks later does not shed light on his state of mind at the time of the comment. Marable's direct testimony that he was not serious about the comment and his explanation of the circumstances constitute a reasonable hypothesis of innocence not negated by the circumstantial evidence of his guilt. We therefore conclude that the referee's finding that Marable committed the crime of solicitation of a burglary is not supported by competent, substantial evidence. We accordingly reject The Florida Bar's suggestion that Marable be disbarred.
However, our rejection of the finding of criminal conduct does not compel the conclusion, as argued by Marable, that there was no ethical misconduct. Neither the charges of misconduct in this case, nor the referee's findings of misconduct, are based entirely or even principally on the proposition that Marable committed a criminal offense. The allegations of misconduct and the charged rule violations are based primarily on Marable's unethical behavior in involving himself and his client with the products of what he believed to be criminal activity. The evidence showed that after Marable had been deceived into thinking a burglary had taken place, he asked that the supposed photos be sent or brought to him; shortly afterwards he called Matthews and directed that Matthews receive and examine the photos instead. The referee's findings in this regard were adequately proven by the evidence and we approve them.
We now address the question of discipline. We note that in their investigation, law enforcement officers actively orchestrated various scenarios in several attempts to entice Marable into criminal acts. These schemes operated as the inducement for Marable to commit the ethical violations at issue in the case. The investigative tactics went beyond what would be reasonably calculated to discover evidence of an extortion attempt and included at least one incident that was nothing more than a provocation. Under the unusual circumstances of this case, we find that the appropriate discipline is suspension from the practice of law for sixty days.
Stanley E. Marable is hereby suspended from the practice of law in Florida for sixty days. The suspension will be effective thirty days from the date this judgment is filed so that Marable can close out his practice and protect the interests of clients with current legal business pending. Marable shall accept no new legal business upon the filing of this opinion. Judgment for costs in the amount of $4,304.93 is entered for The Florida Bar against Stanley E. Marable, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Florida Bar v. Rayman, 238 So.2d 594, 596-97 (Fla. 1970).
[2] See R.Reg.Fla. Bar 3-7.6(k)(1)(A).
[3] E.g., Florida Bar v. Miele, 605 So.2d 866 (Fla. 1992); Florida Bar v. Wagner, 212 So.2d 770 (Fla. 1968); see also R.Reg.Fla. Bar 3-7.7(c)(5).
[4] E.g., Florida Bar v. Fine, 607 So.2d 416 (Fla. 1992); Florida Bar v. MacMillan, 600 So.2d 457 (Fla. 1992).
[5] E.g., Florida Bar v. Hooper, 509 So.2d 289 (Fla. 1987).
[6] E.g., State v. Waskin, 481 So.2d 492 (Fla. 3d DCA 1985), review denied, 488 So.2d 69 (Fla. 1986); State v. Duque, 472 So.2d 758 (Fla. 2d DCA 1985); State v. Gaines, 431 So.2d 736 (Fla. 4th DCA 1983); see also § 777.04(2), Fla. Stat. (1993); Hutchinson v. State, 315 So.2d 546 (Fla. 2d DCA 1975).
[7] E.g., Metcalf v. State, 614 So.2d 548 (Fla. 4th DCA 1993), reversed on other grounds, 635 So.2d 11 (Fla. 1994); State v. Milbro, 586 So.2d 1303 (Fla. 2d DCA 1991); State v. Johnson, 561 So.2d 1321 (Fla. 4th DCA 1990); Jones v. State, 466 So.2d 293 (Fla. 3d DCA), review denied, 478 So.2d 53 (Fla. 1985); Battle v. State, 365 So.2d 1035 (Fla. 3d DCA 1978), cert. denied, 376 So.2d 76 (Fla. 1979).
[8] Compare State v. Waskin 481 So.2d 492 (Fla. 3d DCA 1985), with State v. Gaines, 431 So.2d 736 (Fla. 4th DCA 1983).
[9] E.g., Davis v. State, 90 So.2d 629 (Fla. 1956).