GRIFFIN, J.
Defendant below, Eugene Jenerette [“Jenerette”], appeals his final judgment and sentence contending that his convictions for solicitation of first-degree murder and unlawful possession of a firearm must be reversed. He also contends that the trial court erred in denying his motion to disqualify. We find no error and affirm.
On December 4, 2002, Jenerette was charged by information with the attempted first-degree premeditated murder of Semi *1145 nole County Assistant State Attorney Thomas Hastings [“Hastings”], solicitation to commit first-degree murder, and possession of a firearm suppressor (silencer) by a convicted felon. He entered a plea of not guilty to the charges.
Jenerette filed a motion to disqualify the Honorable Kenneth Lester, Jr., and all judges sitting in Seminole County, on the basis that the intended victim of the alleged offenses practiced before the judges in Seminole County. The motion was granted by court order on the same date, and the case was reassigned to Brevard County. Jenerette filed an acceptance of venue in Brevard County.
Trial was held before the Honorable Warren Burk. Travis McCabe [“McCabe”] testified that he and Jenerette had been friends for approximately ten years. He is currently in prison, but from August to October 2002, he was in the Seminole County Jail awaiting trial in four cases. He had six prior felony convictions at that time. The prosecutor on the two most serious charges he was facing was Hastings. McCabe had never been prosecuted by Hasting before this, but he testified that Hastings had a reputation that if he had your case, you were going to jail. He explained he had rejected Hastings’ plea offer in the case, but then McCabe’s ex-girlfriend decided to testify against him regarding the most serious charge, for which he was facing life imprisonment as a career criminal. McCabe testified that he was very unhappy with his situation and he shared his thoughts with Jener-ette, who was also in prison. McCabe testified that Jenerette told him that he needed to get Hastings off his case, and that the only way to do that would be to “get rid of,” or kill him. He further testified that Jenerette said it should be done through a botched burglary, and if Hastings’ wife was there she should be killed as well. Jenerette offered to be the one to kill Hastings for an initial price of $30,000.00, with $15,000.00 up front. Jen-erette also mentioned that a silencer would be needed; McCabe stated it was Jenerette’s idea to use a silencer and that Jenerette told him he had connections in Orlando whereby he could acquire a gun and silencer. He said that from August to October 2002, the two had approximately fifteen to twenty conversations regarding killing Hastings, including talk of setting up a meeting between Jenerette and McCabe’s father.
McCabe testified that his first thought was that killing Hastings was a good idea, but his second thought was that it would not work, and he contacted his parents and attorney to tell them Jenerette had offered to kill Hastings. He realized that by turning over the information, it could work to his benefit. McCabe testified that he gave Jenerette his father’s home telephone number and discussed with him that Jen-erette should put his father on his visitation list for them to communicate regarding the price and arrangements. McCabe eventually met with an investigator from the State Attorney’s Office and entered into a plea agreement for a sentence of fifteen years with seven years suspended, which he was serving as of trial. A condition of the sentence was that he truthfully testify.
Among other evidence, the State played the videotape taken of a meeting inside, the vehicle of Jimmy Post, a Seminole County investigator who was posing as McCabe’s father. During the conversation, Jener-ette told Post that he would need about ten days, and he was going to make the killing look like a burglary. He stated he might have to take Hastings’ wife out as well. Post asked Jenerette if he was going to kill Hastings, and Jenerette responded that-he was, claiming Hastings needed to die if McCabe wanted any chance of get *1146 ting out of prison. Jenerette remarked, “Listen, he needs to be dead. He is dead, ‘cause, listen, if I didn’t need the money, I’d kill the mother fucker on the house.” Jenerette told him once he did the job, he would collect the rest of the money from Post, and stated he was doing this for McCabe because McCabe was his “buddy.” At the conclusion of the videotape, the State rested.
In open court, Jenerette filed a written motion for judgment of acquittal as to Count I attempted first-degree murder, as well as a written motion for judgment of acquittal as to Count II solicitation to commit first-degree murder, both' of which were denied by the court.
The jury found Jenerette not guilty of Count I attempted first-degree murder, and the court entered a judgment of acquittal on that count only. The jury found Jenerette guilty as charged on Counts II and III, making a special finding on Count II that he carried, displayed, used, threatened to use or attempted to use a firearm, and a special finding on Count III that he actually possessed a firearm.
On January 22, 2004, Jenerette filed a motion to disqualify Judge Burk from sentencing. On February 5, 2004, a hearing was held on the motion to disqualify. Defense counsel pointed out that it was the second motion to disqualify. Defense counsel argued that the “gist of the complaint” was that during the evidentiary phase of the trial, the court made a statement that it felt the defense was a scam and not credible; however, the jury had acquitted Jenerette on the attempted murder count indicating that they did believe the defense. The court entered an order denying the motion to disqualify on the ground that the motion was facially insufficient.
Jenerette was sentenced as a habitual felony offender to life imprisonment as to Count II and thirty years’ imprisonment as to Count III with a three year minimum mandatory sentence for possession of a firearm, to be served concurrently.
Jenerette contends that he was convicted of a “non-existent” crime in Count II because there was no evidence that he solicited another to murder Hastings. He argues that solicitation requires the hiring or inducement of another to commit murder, which did not occur in this case, because there was no proof he sought inducement for anyone other than himself to commit murder. He further urges that this issue is reviewable as fundamental error.
The State responds that solicitation to commit murder is a crime in Florida, and that the trial court properly denied the motion for judgment of acquittal as to Count II because Jenerette was a principal to the solicitation and Jenerette’s actions constituted solicitation.
Criminal solicitation is statutorily defined as “[a] person who solicits another to commit an offense prohibited by law and in the course of such solicitation commands, encourages, hires, or requests another person to engage in specific conduct which would constitute such offense or an attempt to commit such offense.... ” § 777.04, Fla. Stat. (2002). See also The Florida Bar v. Marable, 645 So.2d 438, 442-443 (Fla.1994). “The crime of solicitation is completed when the actor with intent to do so has enticed or encouraged another to commit a crime; the crime need not be completed.” State v. Johnson, 561 So.2d 1321, 1322 (Fla. 4th DCA 1990). We could find no Florida case involving a similar fact pattern, but the record shows that there was substantial competent evidence that Jenerette was a principal to a criminal solicitation. Cf. State v. Manthey, 169 Wis.2d 673, 487 N.W.2d 44 (1992); see also Wayne R. LaFave, Substantive CRIMINAL Law § 11.1(c), at 195-96 (2d ed.2003). In *1147 Florida, a principal includes someone who “aids, abets, counsels, hires or otherwise procures [any criminal offense] to be committed....” § 777.011, Fla. Stat. (2002). We find no merit to the remaining two points on appeal and do not address them.
AFFIRMED.
PALMER and ORFINGER, JJ., concur.