513 So.2d 656 (1987)
THE FLORIDA BAR, Complainant,
v.
Arthur NEWMAN, Respondent.
No. 67528.
Supreme Court of Florida.
September 10, 1987.
Rehearing Denied October 28, 1987.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Patricia S. Etkin, Bar Counsel and George dePozsgay, Co-Bar Counsel, Miami, for complainant.
Rhea P. Grossman, Miami, for respondent.
PER CURIAM.
The Florida Bar filed a nine-count complaint against Arthur Newman, a member of the bar. After a hearing, the referee recommended that Newman be found guilty of violating former Disciplinary Rules 1-102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation), 1-102(A)(6) (conduct adversely reflecting upon one's fitness to practice law), 6-101(A)(3) (neglect of a legal matter entrusted to him), 7-101(A)(1) (intentionally failing to seek the lawful objectives of a client), 7-102(A)(5) (knowingly making a false statement of law or fact), 9-102(A) (failing to preserve the identity of funds and property of a client), 9-102(B)(3) (failing to maintain complete records of client property in the attorney's possession and to render appropriate accountings), and 9-102(B)(4) (failing to promptly pay to a client upon request funds or other property in the attorney's possession to which the client is entitled) of the Code of Professional Responsibility, as well as former article XI, rules 11.02(3)(a) (engaging in conduct contrary to honesty, justice, or good morals) and 11.02(4) (improper trust account procedures) of the Integration Rule.[1] In light of the cumulative nature of the violations, as well as Newman's defiant attitude, the referee recommended disbarment with reinstatement only upon payment of the costs incurred in this action and proof of rehabilitation. Newman petitions this Court for review, challenging both the referee's findings and recommendations.
The Florida Bar conducted an audit of Newman's trust account transactions occuring between January 1981 and May 1984. According to the referee's report, this audit demonstrated that Newman had committed numerous trust account violations during that time period, had written a large number of bad checks on his trust *657 accounts, which in turn had caused numerous accompanying trust account shortages, and had engaged in repeated instances of trust account fund misappropriation. More specifically, the audit found that Newman had failed to preserve all required trust account records, that the trust account records contained unidentifiable deposits and withdrawals, that Newman had failed to clearly indicate the source and reason for all trust fund receipts and disbursements, that Newman had commingled his personal funds with funds belonging to his clients, that he had failed to maintain a file or ledger containing an accounting for each person from whom or for whom he received trust account money, and that he had failed to prepare and preserve quarterly trust account balance reconciliations.
The referee also recommended that Newman be found guilty of two specific instances of misconduct that had adverse impacts on two of his clients. In particular, the referee found that Newman willfully failed to pay the hospital bill of one of his clients, Maricela Garcia-Diaz, even though Newman had ostensibly retained Diaz's funds for that purpose. Because of this failure, Jackson Memorial Hospital filed a civil action against Diaz. Despite notice of the proceedings, Newman failed either to appear at the pre-trial conference or to request a continuance. As a result of Newman's inaction, Jackson Memorial received a default judgment, which adversely affected Diaz's credit rating. Although Newman moved to vacate the judgment, the referee found that Newman had no meritorious defense supporting that motion and that he had in fact misappropriated Diaz's funds. The referee also found that, while representing Joseph Mills in a criminal matter, Newman misappropriated funds specifically intended to cover the cost of attorney's fees and a bail bond and, instead, applied the money to unauthorized purposes. Newman eventually had to draw on other trust account funds in order to pay Slatko Bail Bonds (Slatko), Mills' bail bondsman. Both Diaz and Mills' bail bondsman, to whom Newman issued a bad check, filed complaints against Newman with the Florida Bar.
Challenging the referee's report, Newman first contends that the Florida Bar acted improperly in its investigation and in its presentation of evidence to the referee. Specifically, Newman argues that despite his requests for early hearings on both the Diaz and Slatko complaints and despite Newman's offer to settle the trust account violations prior to the disciplinary hearings the bar delayed the proceedings for an unreasonable amount of time. We find, however, nothing in the record proper to support the allegation that the bar acted improperly in this case. Although the bar's investigation does appear to have taken an unusual amount of time to complete, much of the delay appears attributable to the extremely poor condition of Newman's trust account records, to Newman's frequent failure to cooperate, and to Newman's own requests for delays.[2] The record indicates that the referee expressly reprimanded Newman for his efforts to "stall and delay" the proceedings. We also note that Newman was not charged only with trust account violations. Thus, merely because he was willing to settle the trust account disputes with the bar does not alter the fact that he denied the other alleged wrongdoing. The bar cannot be faulted for pursuing the other charges.
Newman next argues that the evidence fails to support the referee's findings of fact and recommendations of guilt. He first contends that the bar's audit was unauthorized and that, therefore, the bar is legally prohibited from pursuing counts I and II of the complaint, which concern Newman's trust account violations. We wholly reject this assertion and agree with the bar that the audit was warranted by the Diaz and Slatko complaints filed *658 against Newman, by information that the bar received from the clerk of the Eleventh Judicial Circuit regarding a number of bad checks that Newman had written to him, and by the subsequent subpoena that the grievance committee chairman issued. Fla.Bar Integr.Rule, art. XI, rule 11.02(4)(c).
Newman further asserts that, even if the audit were warranted, the audit failed to support the referee's findings. We disagree. A referee's findings and recommendations will be upheld unless clearly erroneous or without record support. The Florida Bar v. Marks, 492 So.2d 1327 (Fla. 1986); The Florida Bar v. Stalnaker, 485 So.2d 815 (Fla. 1986); The Florida Bar v. Price, 478 So.2d 812 (Fla. 1985). In the case at bar, the record clearly shows that the audit uncovered numerous instances of bad checks written on trust accounts, of dishonored trust account checks, of trust account liabilities in excess of assets, and of the improper utilization of trust account funds. The auditor's report indicated that as of May 31, 1984, Newman's trust account records reflected a shortage of $141,583.28, with an open balance of $144,124.12 and an actual balance of $2,540.84.[3] Thus, we find support in the record for the referee's finding of misappropriation.
As to the findings concerning the Diaz and Slatko complaints, we also find Newman's arguments unpersuasive. Newman admits that he failed to protect Diaz's interests either by paying Jackson Memorial Hospital in a reasonable fashion or by making any attempt to prevent the issuance of a default judgment against Diaz. As this Court has stated before, an attorney's failure to diligently pursue a legal matter entrusted to his care constitutes a violation of the oath that each lawyer takes upon admission to the bar. The Florida Bar v. Schilling, 486 So.2d 551 (Fla. 1986). Despite Newman's contentions to the contrary, we find that Newman's inaction clearly injured his client. Likewise, we believe that the record also supports the referee's findings concerning the Slatko complaint. Although Newman argues that the bail bond money was not trust account money, the funds were undisputedly entrusted to Newman for the purpose of obtaining a bail bond for Mills. Newman used the money for different purposes. After writing one bad check to Slatko, Newman had to draw upon the trust funds of other clients to cover the cost of the bond. The record clearly demonstrates a consistent misuse of client funds on the part of Newman.
As his final argument, Newman contends that the referee's recommendation of disbarment is unwarranted. Once again, we disagree. We cannot accept Newman's contention that his misconduct can be characterized as merely poor judgment and poor recordkeeping. As noted above, the record clearly demonstrates Newman's consistent misuse of client funds. Unquestionably, the misuse of client funds is one of the most serious offenses a lawyer can commit. The Florida Bar v. Breed, 378 So.2d 783 (Fla. 1979). This Court has not hesitated to find disbarment justified in cases where attorneys have demonstrated a pattern of misuse of client funds. E.g., The Florida Bar v. Knowles, 500 So.2d 140 (Fla. 1986) (the attorney's pattern of converting client funds to his own use warrants disbarment); The Florida Bar v. Harris, 400 So.2d 1220 (Fla. 1981) (attorney's continued and irresponsible pattern of converting client funds warrants disbarment). We also agree with the referee that the cumulative nature of Newman's misconduct warrants disbarment as well. See The Florida Bar v. Shapiro, 450 So.2d 842 (Fla. 1984).
Although we agree with Newman's contention that it is improper for a referee to consider an attorney's continuous denial of guilt when selecting a recommended discipline, we do not believe that such a consideration affected the referee's recommendations. See The Florida Bar v. Lipman, *659 497 So.2d 1165 (Fla. 1986). While the referee's report did observe that Newman's attitude bordered on defiance during the disciplinary proceedings, we find that Newman's conduct warranted the recommendation of disbarment regardless of his attitude.
Accordingly, Newman is hereby disbarred from the practice of law in this jurisdiction[4] effective thirty days from the date this opinion is filed, thereby giving him time to close out his practice and protect the interests of his clients. Newman shall accept no new clients from the date of this opinion. He can be readmitted to practice only upon payment of the costs incurred in this action and upon proof of rehabilitation. Judgment for costs in the amount of $33,993.95 is hereby entered against Newman, for which sum let execution issue.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT and GRIMES, JJ., concur.
NOTES
[1] This cause was initiated and processed under the former bar rules. All references in this opinion are to the old rules.
[2] The record shows that two referees recused themselves at Newman's request, one such recusal occuring on the day of a scheduled hearing, that the scheduling of the final hearing was further delayed due to the prior commitments of Newman's counsel, and that Newman unsuccessfully requested a continuance so that a second accountant could review his trust account records.
[3] The $144,124.12 total reflects the amount of money that Newman's trust account records showed he should have been holding for thirtythree clients. Even assuming, as Newman argues, that each of these clients could give permission for Newman to use the trust account funds, Newman failed to present proof that each of the clients had actually given permission.
[4] Because these proceedings are under the former bar rules, Newman may apply for readmission 3 years from the date of this opinion.