570 So.2d 933 (1990)
THE FLORIDA BAR, Complainant,
v.
Ben Ira FARBSTEIN, Respondent.
No. 74290.
Supreme Court of Florida.
November 29, 1990.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Kevin P. Tynan, Bar Counsel, and David M. Barnovitz, Co-Bar Counsel, Fort Lauderdale, for complainant.
J. David Bogenschutz of Kay and Bogenschutz, P.A., Fort Lauderdale, for respondent.
*934 PER CURIAM.
We have for consideration a referee's report finding misconduct. The referee recommends that Farbstein be suspended for 90 days followed by a three-year period of probation for misapropriating trust account funds. The Florida Bar (Bar) has petitioned for review, seeking disbarment. We have jurisdiction. Art. V, § 15, Fla. Const.; R. Regulating Fla.Bar 3-7.6.
In October 1987 respondent Farbstein was hired to represent Kenneth Gress and Canam Associates regarding several landlord-tenant cases. Respondent did not adequately communicate with Mr. Gress concerning the cases and Mr. Gress eventually retained another attorney, Norman Leopold, to represent him. Mr. Gress and Mr. Leopold had great difficulty in securing Mr. Gress' files from respondent, which difficulty led attorney Leopold to seek redress from a court of competent jurisdiction. Mr. Gress and Mr. Leopold alleged that respondent misrepresented, on more than one occasion, that the file was available to be picked up. Respondent did not diligently pursue all of the matters that Mr. Gress had entrusted to him.
In December 1986 respondent was hired to represent Susanna Lallouz and her partner, Robert R. Royce, regarding the collection of certain promissory notes. In its complaint, the Bar alleged that respondent failed to keep his clients apprised of the developments in their case, despite requests by the clients for information. Susanna Lallouz and Robert Royce submitted an affidavit stating that since the time of filing the complaint with the Bar, all differences, misunderstandings and complaints with respondent had been satisfied and expressing the desire that all proceedings or actions brought by the Bar in their name involving respondent be terminated.
In January 1987 respondent was hired to represent Robert Nelson regarding a personal injury claim. Respondent received a settlement check in connection with Mr. Nelson's claim, which was deposited in his trust account on April 22, 1988. A check was not disbursed to Mr. Nelson until August 30, 1988. When respondent finally sent the funds in question to the client, he failed to secure the general release, in advance, but transmitted both the check and the release to his client at the same time, in violation of respondent's escrow agreement with the insurance company.
The Bar conducted an audit of respondent Farbstein's trust accounts. The auditor examined the trust account maintained at Regent Bank for the period January 1, 1987 to April 5, 1988, the date on which it was closed. This account was an interest-bearing account and earned $169.91 during the period examined. Respondent failed to follow the standards for maintaining an interest-bearing trust account.
The auditor also examined trust accounts maintained by respondent at Seminole National Bank for the period April 14, 1987 to April 22, 1988 and at Sun Bank for the period May 20 to August 31, 1988. On April 22, 1988, respondent deposited in the trust account maintained at Seminole bank a check in the amount of $6,000.00 payable to Robert Nelson and Marion Nelson, individually and as husband and wife and Ben I. Farbstein, as their attorney. The balance in the trust account at the end of April 1988 was $5,904.36. The following month, respondent issued three checks to himself for the total amount in the trust account and closed the account. His liability to clients at this date was at least $24,528.62. Respondent finally paid the Nelsons on August 30, 1988, with a cashier's check from Sun Bank in the amount of $3,832.50. He used other client funds to satisfy this liability.
The balance in the trust account at Sun Bank as of May 30, 1988 was $2,400.00; his liability to clients as of this date was $23,528.62, reflecting a shortage in his trust account of $21,128.62. In the following months, respondent utilized recent deposits to pay obligations incurred in previous months. On July 15, 1988, respondent deposited $8,500.00 from a loan he obtained from his father, which helped in reducing his liability to clients. On August 30, 1988, the balance in the trust account was $3,703.85 and his client liability was $16,847.29, reflecting a shortage of $13,143.44. *935 In addition to these shortages, respondent failed to maintain the minimum trust account procedures set forth in the Rules Regulating Trust Accounts.
Based upon the parties' stipulation, the referee found respondent guilty of violating the following Rules Regulating The Florida Bar: 4-1.3 (lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (lawyer shall keep client reasonably informed); 4-1.16(d), 4-3.2, and 4-8.4(c) (upon termination of representation, lawyer shall take steps reasonably practicable to protect client's interest such as surrendering papers and property to which client is entitled; lawyer shall make reasonable efforts to expedite litigation consistent with interests of the client; lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 3-4.3 (lawyer shall not engage in conduct contrary to honesty or justice); 4-1.15(b) (upon receiving funds in which client has an interest, lawyer shall promptly notify client and promptly deliver to client any funds client is entitled to receive); and 4-8.4(a) (lawyer shall not violate a disciplinary rule). The referee also found that respondent had violated the following Rules Regulating Trust Accounts: 5-1.1 (money entrusted to an attorney for a specific purpose may only be applied for that purpose); 5-1.1(d) and 5-1.2 (which provide the standards for maintaining an interest-bearing trust account and for maintaining the minimum trust accounting records).
In his report, the referee noted that Farbstein called several witnesses in mitigation and found the following factors in mitigation:
Although the findings I have recommended in this report encompass extremely serious trust fund misappropriation which I regard as among the most serious offenses that can be committed by an attorney and which ordinarily warrants disbarment, I find special circumstances which, in my opinion, should temper the sanction to be imposed. After evidentiary hearing in this matter, the Referee finds that the defalcations herein admitted, and found, were the direct and proximate result of severe, poly-substance abuse for which respondent has voluntarily, and prior to these Bar proceedings, successfully sought psychological and medical assistance at ANON-ANEW and Alcoholics and Narcotics Anonymous. He has demonstrated his exemplary adherence to the principles thereof and the Referee has heard and accepted the several testimonies of Dr. Fred Frick of ANON-ANEW, William Kilby, Esq., counsel for F.L.A. and various other witnesses in testament thereof, including uncontroverted testimony that counsel's ability to practice law is not affected or dismissed currently. I find that respondent, from a very early age (13 years) as a result of an accident in which one of his hands was mangled and almost blown away, developed a severe lack of self esteem which led him on a road to alcohol and drug addiction. Respondent has made remarkable strides in attaining a recovery from his many addictions, has provided complete restitution to all victims of his trust account misappropriations and has retained the services of a certified public accountant who has implemented procedures to insure respondent's strict adherence to and compliance with sound trust accounting procedures in accordance with the Rules Regulating Trust Accounts.
Not only has respondent attained a recovered status, but he has demonstrated his rehabilitation by extending a helping hand to attorneys and other parties who suffered similar addiction problems.
... Further, the Referee has observed the testimony of the respondent and finds in that testimony and the testimonies of other witnesses, substantial credible evidence that respondent has demonstrated honest and significant remorse in a desire to continue his rehabilitation. There is no reason to believe that he will not do so.
The referee recommended a ninety-day suspension to be followed by a period of probation for three years. The Bar filed a petition for review with this Court seeking *936 disbarment rather than the recommended discipline.
This Court has stated on numerous occasions that misuse of client funds is one of the most serious offenses a lawyer can commit. The Fla. Bar v. Schiller, 537 So.2d 992 (Fla. 1989); The Fla. Bar v. Newman, 513 So.2d 656 (Fla. 1987). Upon a finding of misuse or misappropriation, there is a presumption that disbarment is the appropriate punishment. Schiller, 537 So.2d at 993. This Court has previously recognized, however, that this presumption can be rebutted by various acts of mitigation. See Schiller; The Fla. Bar v. Pincket, 398 So.2d 802 (Fla. 1981).
By the time of the final hearing, Farbstein had made full restitution to all clients. We also note the respondent's cooperation with the Bar, his remorse, and the effect of his drug addiction. While we agree with the referee that these circumstances constitute mitigating factors, we cannot agree with the referee's recommendation of a mere ninety-day suspension. As this Court recognized in The Florida Bar v. Tunsil, 503 So.2d 1230, 1231 (Fla. 1986):
The mitigating factors simply can neither erase the grievous nature of respondent's misconduct in stealing clients' funds, nor diminish it to the extent of warranting the same punishment which has been meted out for much less serious offenses... . Despite the presence of mitigating circumstances in this case, we simply cannot agree to such a lenient discipline. We note that in other misappropriation cases involving mitigating factors, we have not been so understanding. See The Florida Bar v. Roth, 471 So.2d 29 (Fla. 1985) (lawyer who misappropriated funds suspended for three years); The Florida Bar v. Morris, 415 So.2d 1274 (Fla. 1982) (lawyer who used trust funds for personal purposes suspended for two years); The Florida Bar v. Anderson, 395 So.2d 551 (Fla. 1981) (lawyer who misappropriated trust funds, failed to keep adequate trust account records and issued worthless checks suspended for two years).
The record demonstrates, however, that disbarment is likewise not the appropriate punishment.[1]
We find that a three-year suspension is warranted in light of the seriousness of Farbstein's misconduct in misappropriating funds, his failure to comply with trust account procedures, his neglect of legal matters entrusted to him, and his failure to adequately communicate with clients. Accordingly, we reject the referee's recommendation that Farbstein be suspended for only ninety days and order him suspended for three years requiring proof of rehabilitation for reinstatement, including passage of the professional ethics portion of The Florida Bar Examination. The suspension shall be followed by a period of probation for three years with the following conditions which were recommended in part by the referee:
1. During the period of suspension and probation, respondent, at his sole cost and expense, be monitored by F.L.A., Inc. regarding his continued rehabilitation and recovery and be subject to random drug testing in the discretion of F.L.A., Inc.
2. During the period of probation, respondent, at his sole cost and expense, employ the services of a certified public accountant who shall, on a quarterly basis, render reports to the Bar certifying respondent's complete compliance with the Rules Regulating Trust Accounts.
Farbstein's suspension will be effective thirty days from the filing of this opinion. Farbstein may accept no new business *937 from the date of this opinion. Judgment for costs in the amount of $4,596.27 is hereby entered against Farbstein, for which sum let execution issue.
It is so ordered.
OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
EHRLICH, J., dissents with an opinion, in which SHAW, C.J., and KOGAN, J., concur.
EHRLICH, Justice, dissenting.
Mr. Farbstein emphasizes that the trust violations were without intent, but were unequivocally due to his addiction. He also relies heavily on his cooperation with the Bar and the fact that restitution was made. I find such reliance to be unavailing. Long ago, this Court stated that "misuse of clients' funds is one of the most serious offenses a lawyer can commit" and gave notice to the legal profession of this state that henceforth the Court would "not be reluctant to disbar an attorney for this type of offense even though no client is injured." The Fla. Bar v. Breed, 378 So.2d 783, 785 (Fla. 1979).
I am unable to distinguish the present circumstances from those presented in this Court's recent decision in The Florida Bar v. Shuminer, 567 So.2d 430 (Fla. 1990). Shuminer was found to have used $11,000 received from Felipe Sudarsky in 1987 to be held in trust for use in a pending real estate transaction for other, unauthorized, purposes. Later that year, he settled a case with the insurers for a total of $7,589 without the clients' knowledge or consent; he then told the clients that negotiations were proceeding, deposited the checks in his office operating account and issued a check for $5,000 to an automobile dealer towards the purchase of an automobile for himself. In addition, Shuminer failed to satisfy several doctor's liens. Indeed, it would appear that the total sum of funds misappropriated by Shuminer was approximately equivalent to the total misappropriation in the present case. As set forth in the decisions in Shuminer and the present case, the treatment which Shuminer underwent was almost identical to the treatment engaged in by respondent Farbstein. Indeed, William Kilby, staff attorney for F.L.A. Inc., testified on behalf of both respondents. Additionally, the mitigating circumstances found by the referee with regard to respondent Farbstein are essentially a mirror-image of the mitigating circumstances in Shuminer:
... .
2. Great personal and emotional problems including his disease of addiction, his impairment... .
3. A timely and good faith effort at restitution made to all clients... .
4. Cooperation with the Bar in that a probable cause hearing was waived and an unconditional guilty plea was entered in the proceeding.
... .
6. His character and reputation were good as [testified] to by two Judges.
7. He was clearly mentally impaired due to his addiction.
8. He has been seriously, productively and successfully involved in rehabilitation for over one (1) year.
9. He has expressed and shown remorse which this referee feels to be genuine.
Shuminer, at 432. This Court unanimously rejected the referee's recommended eighteen-month suspension. The majority instead concluded that disbarment was the appropriate discipline. Id. at 432.
I can discern no distinction between Shuminer and the present case which would justify the lesser discipline imposed herein. In a footnote, the majority endeavors to point out "several distinguishing factors which persuade us that Farbstein need not be disbarred." The difference in the discipline recommended by the respective referees cannot be a significant factor since a referee's recommended discipline does not carry the weight that this Court gives to the referee's finding of fact. See The Fla. Bar in re Inglis, 471 So.2d 38, 41 (Fla. 1985) ("With regard to legal conclusions and recommendations of a referee, this Court's scope of review is somewhat broader as it is ultimately our responsibility *938 to enter an appropriate judgment."). See also The Fla. Bar v. Langston, 540 So.2d 118 (Fla. 1989). The fact that respondent cooperated with the Bar's investigator and Shuminer did not do so is a difference, as is the fact that respondent and Shuminer had made full restitution to their clients but Shuminer had not repaid doctors monies to which they were entitled. These so-called "distinguishing factors" cannot possibly justify the significant difference in discipline meted out where both lawyers were found guilty of misappropriating client's funds. There are always going to be minor factual differences between cases, and, in my opinion, the Court is sending mixed signals to the bench and bar when we try to justify substantial differences in discipline by pointing to truly insignificant factual differences. Both respondent and Shuminer had two things in common; they misappropriated client's funds, and blamed drugs for their problems.
I reemphasize my belief that to impose a suspension in a case such as this "is not adequate to demonstrate to the public that this Court truly meant what it said in Breed. We really ought to live up to what we said we would do in Breed or recede from it." The Fla. Bar v. Seldin, 526 So.2d 41, 46 (Fla. 1988). I accordingly dissent as to the appropriateness of the discipline imposed. The governing body of The Florida Bar, the Board of Governors, has recommended that Mr. Farbstein be disbarred for his conduct, and I agree.
SHAW, C.J., and KOGAN, J., concur.
NOTES
[1] In The Florida Bar v. Shuminer, 567 So.2d 430 (Fla. 1990), this Court recently disbarred an attorney for misuse of clients' trust funds. There are many similarities in the instant case, but there are also several distinguishing factors which persuade us that Farbstein need not be disbarred. While both Farbstein and Shuminer made full restitution to their clients, Shuminer had not yet repaid the doctors he had cheated. Shuminer did not cooperate with the Bar's investigation, whereas Farbstein readily turned over his records and hired a certified public accountant to ensure strict compliance with trust account procedures. Further, the referee in Farbstein's case recommended only a ninety-day suspension, whereas Shuminer's referee recommended a suspension of eighteen months.