682 So.2d 1070 (1996)
THE FLORIDA BAR, Petitioner,
v.
Ronald T. SPANN, Respondent.
Nos. 79345, 81631 and 83455.
Supreme Court of Florida.
July 18, 1996.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Kevin P. Tynan, Bar Counsel, Fort Lauderdale, for Complainant.
Fred Haddad, Fort Lauderdale, for Respondent.
PER CURIAM.
We have for review the referee's report regarding alleged ethical breaches committed by Ronald T. Spann[1] in the course of representing five individual clients over a five-year period, 1988-1993. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution. By agreement of the parties, these cases were consolidated below for purposes of review. We approve the referee's findings of fact and disbar Spann.

CASE NUMBER 79,345
The record reflects that, in 1988, Ronald Spann represented Steven Amburgey in a workers' compensation case. Their retainer agreement authorized Spann to hold some of Amburgey's compensation benefits in trust and use it as a fund for compensation so long *1071 as the court approved all attorney's fees and costs. In November 1988, Spann withdrew over $1,000 in attorney's fees and over $100 in costs, but did not file an order with the court requesting approval of these disbursements until the following month. From February through June, 1989, Spann additionally withdrew approximately $400 in fees without court approval.
Recognizing that his removal of funds was improper, Spann opened a new trust account shortly thereafter. Although he deposited $1,491.82 into the new account to compensate for all but $171.14 of the funds which he previously had disbursed to himself without approval, he never returned the difference to the trust account or to Amburgey. Spann then petitioned the court to allow him to disburse the $1,491.82 in the trust account to himself, but failed to inform the court that he previously had withdrawn funds from Amburgey's trust account without approval.
The referee concluded that Spann's failure to inform the court of his previous withdrawals was a misrepresentation to the court and also found that Spann committed numerous other ethical breaches while representing Amburgey. For instance, Spann notified Amburgey that he would receive no further compensation benefits until he signed a power of attorney or had his new attorney contact Spann; he failed to return Amburgey's persistent phone calls and letters; he delayed excessively in forwarding compensation funds to Amburgey; he failed to move to withdraw as Amburgey's counsel for more than two months after he was discharged; and finally, he failed to render competent legal services to Amburgey in his workers' compensation case. In light of these facts, the referee concluded that Spann violated twenty provisions of the Rules Regulating The Florida Bar.[2]
As to Spann's representation of Leonard Champagne, the record reflects that, in August 1988, Spann entered into settlement negotiations on Champagne's behalf with Southern Bell's general counsel. Spann negotiated an agreement for Champagne and Southern Bell forwarded the appropriate release forms to Spann's office. However, when Spann could not locate Champagne to execute the releases, he instructed one of his nonlawyer employees to forge Champagne's signature on the forms. Spann then notarized the forged signatures as Champagne's. Champagne had not authorized Spann or any of his employees to accept the settlement on his behalf.
When Southern Bell learned that the signatures on the release forms were not Champagne's, they demanded that Spann secure judicial approval for his actions. Accordingly, Spann filed a petition for an order to deposit funds into the court registry, but did not inform the court that (1) he authorized *1072 his employee to sign Champagne's name on the releases and (2) he notarized the forgeries. The referee found these actions constituted a fraud upon the court.
In addition, the referee found that when Champagne hired Spann, the parties entered into an improper retainer agreement. The agreement provided for, and Champagne paid, a $1,000 nonrefundable retainer fee. Additionally, its terms called for the payment of a forty percent contingent fee on any "award under $1 million after a lawsuit is filed." Although no lawsuit was ever filed, Spann calculated his attorney's fees as forty percent of the pre-tax settlement with Southern Bell and took a total of $5,206 from Champagne's $7,622.32 post-tax settlement.
Spann also allowed several of his nonlawyer employees to sign letters "for the firm" which failed to disclose their nonlawyer status, and advertisements for legal services were placed in the phone book for one of his employees, even though the employee was not admitted to practice law in Florida.
Finally, the referee noted that Spann was served with a grievance committee subpoena on May 24, 1990, but failed to comply with the notice to produce certain records.[3]

CASE NUMBER 81,631
In this case, the record reflects that, in 1991, Spann represented Edward Jenkins in a claim for benefits under his pension plan. Their contingent fee agreement provided that if Spann's services were terminated before reaching a settlement or final judgment, Jenkins would owe Spann for services rendered based on a specified hourly rate schedule.
Based upon these facts, the referee found the agreement constituted a penalty clause in violation of rule 4-1.5(a)(an attorney shall not charge or collect an illegal, prohibited or clearly excessive fee), because Jenkins would be forced to pay Spann immediately upon discharge even where the contingency had never been met, and that Spann also violated rule 4-5.3(a)(a partner shall make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer).[4]
As to the Bar's complaint as to Spann's actions concerning Craig Reese, the record reflects that in November 1991, Reese met with Spann about a potential wrongful termination action. At the disciplinary hearing before the referee, Spann testified that Reese retained him, but was unable to produce a retainer agreement or testify about more than the initial consultation. Nevertheless, Spann performed legal services for Reese and not only charged him for the services plus interest, but also revealed confidential information about Reese's case to third parties.
After Reese filed a bar grievance, Spann and his employees left messages on Reese's answering machine threatening to continue *1073 to attempt to collect an attorney's fee unless Reese withdrew his grievance.[5]
The referee concluded that Reese had never retained Spann and that Spann violated rules 4-1.2(a)(a lawyer shall abide by a client's decisions concerning the objectives of representation and shall consult with the client as to the means by which they are to be pursued), 4-1.6(a)(a lawyer shall not reveal information relating to representation of a client unless the client consents after disclosure to the client or unless required), 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice may constitute a cause for discipline), 4-5.3(a)(a partner shall make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer), and 4-8.4(d)(a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

CASE NUMBER 83,455
In this case, the record reflects that in August 1993, Spann notified his client, Star-Lite Pools, that he would no longer be representing Star-Lite in its collection matter. However, the notification letters, which also advised Star-Lite of the statute of limitations applicable to its claims, were authored by two of Spann's nonlawyer employees. Accordingly, the referee found that Spann violated rules 4-5.3(a) and (c) and 4-5.5(b)[6] by failing to adequately supervise his staff and assisting in the unauthorized practice of law because the letters authored by his nonlawyer employees contained legal advice that only a lawyer can give.

GUILT
Spann contends that the referee's findings of fact as to all three cases are not supported by the evidence. A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986). Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
We find that the referee's findings of fact and recommendations concerning guilt as to all counts in all three cases are supported by evidence in the record. Spann has not carried his burden to demonstrate otherwise.

DISCIPLINE
Finally, we turn to the recommended discipline in this case. In light of Spann's numerous ethical violations in each of these cases, the referee concluded that Spann's misconduct "evidenced a total disregard for the Rules of Professional Conduct," and recommended that he be suspended for three years on case number 79,345 and three years on case number 81,631 to run consecutively.[7] In addition, the referee found as aggravating factors under standard 9.1 of the Florida Standards for Imposing Lawyer Sanctions that (1) Spann had a prior disciplinary history, (2) his misconduct was motivated by selfishness, (3) he engaged in a pattern of misconduct and multiple offenses, and (4) he had substantial experience in the practice of law.
The Bar contends that the serious nature of some of Spann's actions and his pattern of *1074 misconduct over a number of years warrant his permanent disbarment. On the other hand, Spann challenges the recommended discipline, contending that should this Court choose to impose any punishment at all, his activities deserve only a public reprimand because any misconduct was unintentional and his clients were not injured.
Our review in this area is broad because it is we who bear the ultimate responsibility to order an appropriate sanction in attorney discipline cases. Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989). As we have repeatedly stated, discipline must serve three purposes:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Florida Bar v. Lord, 433 So.2d 983, 986 (Fla.1983)(emphasis omitted).
Disbarment is an appropriate punishment where, as here, multiple and serious disciplinary offenses have occurred. Authorizing the forging of a signature and the subsequent notarization of the signature, knowing it to be a forgery, constitute serious misconduct. See Florida Bar v. Dubow, 636 So.2d 1287, 1289 (Fla.1994)(attorney's notarization of forged signature led, in part, to disbarment); see also Florida Bar v. de la Puente, 658 So.2d 65 (Fla.1995)(penalty of disbarment appropriate when attorney has engaged in cumulative misconduct); Florida Bar v. Knowles, 572 So.2d 1373 (Fla.1991)(attorney's neglect and dishonesty constituted cumulative misconduct which warranted disbarment); Florida Bar v. Golden, 566 So.2d 1286 (Fla.1990) (cumulative nature of attorney's misconduct warranted disbarment rather than two-year suspension recommended by referee); Florida Bar v. Newman, 513 So.2d 656 (Fla.1987)(cumulative misconduct warrants disbarment); Florida Bar v. Gold, 203 So.2d 324 (Fla.1967)(disbarment appropriate where attorney, among other things, forged a document, notarized it, and used it for his own gain).
Adding the severity and number of violations here and the lengthy period of time over which these violations occurred, we find the referee's recommendation of consecutive suspensions to be inadequate. We also note that Spann, who has close to twenty years of legal experience, continues to maintain that he has done nothing wrong. Thus, we conclude that disbarment is the most appropriate punishment.
Ronald T. Spann is hereby disbarred for a period of five years and thereafter for an indefinite period until he demonstrates full compliance with the rules and regulations governing the admission to the bar and pays the costs of the disciplinary proceedings. Respondent will also be required to demonstrate that he has made restitution as recommended in the referee's report before any petition for readmission to the Bar may be granted. The disbarment will be effective thirty days from the filing of this opinion so that Spann can close out his practice and protect the interests of existing clients. After that date, Spann is enjoined and prohibited from the practice of law in this state. If Spann notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Spann shall accept no new business from the date this opinion is filed until the disbarment is completed. Judgment for costs in the amount of $6,020.07 is entered in favor of The Florida Bar and against Ronald T. Spann, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Spann was admitted to practice in Florida in 1984. He was admitted to practice in New York and Washington, D.C. in 1977. He previously was sanctioned by this Court for neglect of a legal matter in 1987, and for charging a clearly excessive fee in 1993.
[2] Rules 3-4.2 (violation of the Rules of Professional Conduct is cause for discipline), 3-4.3 (the commission by a lawyer of any act contrary to honesty and justice may constitute a cause for discipline), 3-4.4 (the commission of criminal misconduct is cause for discipline), 4-1.5(a) (an attorney shall not charge or collect an illegal, prohibited or clearly excessive fee), 4-1.15(a) (a lawyer shall hold funds in trust separate from the lawyer's own property), 4-1.15(b) (a lawyer shall promptly deliver to his client any funds that the client is entitled to receive), 4-1.16(a)(3) (a lawyer shall withdraw if the lawyer is discharged), 4-3.3(a)(2) (a lawyer shall not knowingly fail to disclose a material fact to a tribunal), 4-3.3(b) (a lawyer has a continuing duty to inform the tribunal of false statements made to the tribunal), 4-5.1(a) (a partner in a law firm shall make reasonable efforts to ensure that all lawyers in the firm conform to the Rules of Professional Conduct), 4-5.1(b) (a lawyer having direct supervisory authority over another shall make reasonable efforts to ensure that the lawyer conforms to the Rules of Professional conduct), 4-5.1(c)(1) (a lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if the lawyer orders or ratifies the conduct), 4-5.3(a) (a partner shall make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer), 4-5.3(b) (a lawyer having direct supervisory authority of nonlawyer employees shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer), 4-5.3(c)(1) (a lawyer is responsible for a nonlawyer employee's conduct that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer), 4-8.4(a) (a lawyer shall not violate the Rules of Professional Responsibility), 4-8.4(b) (a lawyer shall not commit a criminal act), 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 5-1.1 (money entrusted for a specific purpose is held in trust and must be applied only to that purpose).
[3] Thus, the referee concluded that Spann violated rules 3-4.2 (violation of the Rules of Professional Conduct is cause for discipline), 3-4.3 (the commission by a lawyer of any act contrary to honesty and justice may constitute a cause for discipline), 3-4.4 (the commission of criminal misconduct is cause for discipline), 4-1.5(a) (an attorney shall not charge or collect an illegal, prohibited or clearly excessive fee), 4-3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal), 4-3.3(a)(2) (a lawyer shall not knowingly fail to disclose a material fact to a tribunal), 4-5.3(a) (a partner shall make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer), 4-5.3(b) (a lawyer having direct supervisory authority of nonlawyer employees shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer), 4-5.3(c)(1) (a lawyer is responsible for a nonlawyer employee's conduct that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer), 4-5.5(b) (a lawyer shall not assist a person who is not a member of the bar in the performance of activity that constitutes the unlicensed practice of law), 4-8.4(a) (a lawyer shall not violate the Rules of Professional Responsibility), 4-8.4(b) (a lawyer shall not commit a criminal act), 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).
[4] The referee further noted that Spann also allowed one of his nonlawyer employees to sign a letter concerning Jenkins' case "for the firm" without disclosing his nonlawyer status.
[5] Once again, Spann allowed his nonlawyer employees to sign letters "for the firm" without disclosing their nonlawyer status.
[6] Respectively: a partner shall make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer; a lawyer shall be responsible for conduct of nonlawyer employees that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer; and, a lawyer shall not assist a person who is not a member of the bar in the performance of activity that constitutes the unlicensed practice of law.
[7] The referee declined to recommend the imposition of any additional punishment for Spann's ethical breaches in case number 83,455.