714 So.2d 448 (1998)
THE FLORIDA BAR, Complainant,
v.
Santiago S. PELLEGRINI, Respondent.
Nos. 86512, 87365.
Supreme Court of Florida.
June 18, 1998.
*449 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and Billy J. Hendrix, Bar Counsel, Miami, for Complainant.
H. Dohn Williams, Jr., Fort Lauderdale, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's amended report regarding alleged ethical violations by attorney Santiago S. Pellegrini. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed in this opinion, we approve the referee's factual findings and recommendations and the referee's recommended discipline. We suspend Pellegrini from the practice of law for three years from the date of the referee's amended report, July 18, 1997, and continuing thereafter until he proves rehabilitation as provided in rule 3-5.1(e), Rules Regulating the Florida Bar.
Pellegrini was suspended from the practice of law by emergency order of this Court on August 9, 1995, based on allegations of trust fund violations and his failure to produce records required by a Bar subpoena. The Bar ultimately filed a five-count amended complaint against Pellegrini. Subsequently, this Court ordered Pellegrini to show cause as to why he had failed to comply with the emergency suspension order. The Court consolidated the two matters for final hearing. The Bar disputes certain factual findings and recommendations contained in the referee's report and the recommended discipline.

PROCEEDINGS BEFORE REFEREE
The parties do not dispute the referee's findings and recommendations on counts I, II, and V, or on the order to show cause. Pellegrini admitted that he failed to produce records related to his trust account required by Bar subpoena as alleged in count I. The referee recommended finding Pellegrini guilty on count I of violating rules 4-1.15(a)(client's funds to be held in trust), 4-1.15(d) (compliance with trust accounting rules) and 5-1.1(d) (failure to maintain minimum trust accounting records), and not guilty of violating rule 5-1.1(a)(money entrusted *450 to attorney for specific purpose to be held in trust and applied only to that purpose).
In count II, the referee found that Pellegrini collected an excessive contingency fee from a client and misappropriated other monies from the client's settlement funds. The client retained Pellegrini under a contingency fee arrangement to represent her in a personal injury action. Pellegrini filed a complaint in circuit court seven days after the settlement check was mailed and one day before the client signed a release accepting the settlement. The tortfeasor never filed an answer or a demand for arbitration. Pellegrini collected forty percent of the total settlement. The referee found that Pellegrini misappropriated other monies from the client's settlement funds but that Pellegrini repaid the amounts in full after the Bar began its investigation. Pelligrini claimed he withheld this money in order to negotiate on her medical bills. The client testified that Pellegrini withheld $12,000 from her settlement for payment of her medical bills. Pellegrini ultimately repaid her approximately $2,000 after the Bar began its investigation.
The referee recommended finding Pellegrini guilty on this count of violating rules 4-1.15(a)(client's funds to be held in trust), 4-1.5(f)(4)(B) (limitation on contingency fees), 4-8.4(b)(committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 4-8.4(c)(engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 5-1.1(a)(money entrusted to attorney for specific purpose to be held in trust and applied only to that purpose), Rules Regulating The Florida Bar. The referee recommended finding Pellegrini not guilty of violating rule 4-8.4(a) (lawyer shall not violate Rules of Professional Conduct), Rules Regulating The Florida Bar.
The referee recommended a finding of not guilty on count V in which the Bar alleged that investigators employed by Pellegrini submitted inflated bills or billed for services not provided. The Bar does not contest this finding.
With regard to the order to show cause, the referee recommended holding Pellegrini in contempt for failing to comply with the emergency order of suspension. The referee found that Pellegrini failed to provide the Bar within thirty days of the order with the requisite affidavit listing all clients who were furnished a copy of the emergency suspension order. Although he responded with information relating to his existing clients, he did not provide the information in the form required by the Rules Regulating The Florida Bar. Pellegrini also failed to provide the Bar within applicable time limits with copies of the notice of suspension sent to all financial institutions where he maintained trust accounts. However, there was only one bank where he maintained his trust account and he claimed that the bank had actual notice.
Count III of the complaint involved allegations related to Pellegrini's representation of Hilda Ingles in a personal injury action. The referee found that Pellegrini collected an excessive fee (forty percent) from Ms. Ingles and deducted $1,905 from her settlement amount as reimbursement for pretrial deposition costs, although no depositions were ever taken. Although the money was later refunded, the referee found that Pellegrini debited Ingles' account for filing a complaint, although suit was never filed. The referee recommended finding Pellegrini guilty of violating rules 4-1.15(a), 4-1.5(f)(4)(B), 4-8.4(c), and 5-1.1(a), Rules Regulating The Florida Bar.
The Bar disputes the referee's findings and recommendation on the remaining claim in count III. The Bar alleged that Pellegrini fabricated a witness to Ingles's accident and used the fabricated testimony to negotiate a settlement and to challenge a traffic citation against Ingles.
Ingles consulted with Pellegrini, telling him that one week earlier she had been involved in a collision with a Dade County bus on a downtown Miami street at 6 a.m. After the accident an unidentified man approached her and asked if she was all right. Ingles knew of no other witness to the accident. Ingles was given a ticket and cited as being responsible for the accident. Pellegrini initially declined to take the case. He changed his mind when the unidentified witness, *451 Arturo Rivero, a long-time employee of Pellegrini's, appeared and gave a statement absolving Ingles of fault and blaming the bus driver for the accident. After Pellegrini presented Dade County claims officials with Rivero's statement, the county investigated the claim and ultimately settled with Ingles. The referee found that although Rivero's presence at the accident was questionable, the Bar failed to meet its burden of proof on this claim.
The Bar argues that the referee's finding on this claim is clearly erroneous and contradicted by the record. In Bar discipline proceedings, evidence of misconduct must be clear and convincing for a finding of guilt. See Florida Bar v. Marable, 645 So.2d 438, 442 (Fla.1994); Florida Bar v. McClure, 575 So.2d 176, 177 (Fla.1991). A referee's findings of fact regarding guilt are presumed correct and should be upheld unless clearly erroneous or without support in the record. See Florida Bar v. Beach, 699 So.2d 657, 660 (Fla.1997); Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla.1994); Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986).
The Bar's evidence on this claim was circumstantial. Rivero worked as a handyman on properties owned by Pellegrini and Pellegrini paid Rivero for his work from client trust funds. The Bar urges that Rivero's stated reason for being in downtown Miami at 6 a.m. was suspect. Pellegrini testified in deposition that he thought Rivero may have been purchasing supplies. Rivero told an investigator hired by Dade County to investigate Ingles' claim that he was working in that area. Ingles denied that the witness had given her his name and phone number although Rivero told the investigator that he had done so. However, Ingles testified that she was badly shaken after the accident. She was taken to the hospital by ambulance immediately after the accident.
There is also evidence in the record that investigators employed by Dade County found Rivero steadfast in his story and could find no holes in his version of the events. The county ultimately determined the bus driver to be partially at fault in the accident. Our role is not to reweigh the evidence and substitute our view of the credibility of the witnesses for that of the referee. See Florida Bar v. Lecznar, 690 So.2d 1284, 1287 (Fla.1997); Florida Bar v. Bustamante, 662 So.2d 687, 689 (Fla.1995). We decline to do so here because we do not find the referee's findings on this claim to be clearly erroneous or without support in the record.
The Bar also challenges the referee's findings and recommendations on count IV. In that count, the Bar alleged that Pellegrini billed clients for services allegedly performed by Dr. Arnaldo Carmouze, Sr., which were not actually rendered, and pocketed the money himself. The work was allegedly performed at a clinic owned by Dr. Carmouze's son, Arnaldo Carmouze, Jr.
The referee recommended finding Pellegrini not guilty on count IV, based on the following factual findings. Pellegrini referred his clients' files to Dr. Carmouze, Sr., for review of their medical records and their treatment by other medical providers. According to client records, Dr. Carmouze submitted invoices for review of the medical records for eight of Pellegrini's clients at a charge of $500 per hour. Pellegrini deducted the charges from the clients' final settlements. At the hearing, Dr. Carmouze, Sr., indicated that he did not remember performing any work for Pellegrini or receiving any money from him. Dr. Carmouze denied ever having spoken with Pellegrini. Dr. Carmouze did not recognize the names of any of the clients whose files he allegedly reviewed. Dr. Carmouze testified that he determined that he had no dealings with Pellegrini's clients by checking for patient charts. However, he admitted that if he never treated the patient, there would probably be no chart. Dr. Carmouze also testified that bills and receipts would likely have been handled by others in the office.
The Bar argues that the referee's findings on this count are clearly erroneous. The Bar claims that Pellegrini's testimony and the sworn statement of Arnaldo Carmouze, Jr. regarding the arrangement are illogical, contradictory, and patently untrue. As we previously noted, the evidence of guilt must be clear and convincing, see Marable, 645 So.2d at 442, and the referee's findings *452 must be upheld unless clearly erroneous or without record support. See Rue, 643 So.2d at 1082. "If the referee's findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Id. The party contesting the referee's findings of fact and conclusions on guilt must demonstrate that there is no evidence in the record to support the findings or that the record evidence clearly contradicts the conclusions. See id.; Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
The Bar points to evidence in the record that arguably supports its version of the facts and contradicts Pellegrini's explanation of the arrangement with Dr. Carmouze. The referee resolved these conflicts in Pellegrini's favor. See Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994) (responsibility for finding facts and resolving conflicts in the evidence lies with the referee). Essentially, as with the previous findings, the Bar asks this Court to reweigh the evidence and reach different factual findings. We decline to do so. See Lecznar, 690 So.2d at 1287; Bustamante, 662 So.2d at 689; Rue, 643 So.2d at 1082.
There is evidence in the record to support the referee's findings on this claim. Client files contained invoices from Dr. Carmouze for review of files. The referee based his findings in part on the testimony of Armando Pelaez, a former employee of Pellegrini, who said that he delivered client files to the clinic for Dr. Carmouze's review. The Bar asks this Court to find Pelaez's testimony not credible. Determination of the credibility of witnesses is a function better left to the referee. The referee heard and observed the witnesses first hand and thus was in a unique position to assess their credibility. See Lecznar, 690 So.2d at 1287; Florida Bar v. Thomas, 582 So.2d 1177 (Fla.1991). Although Dr. Carmouze testified that he had no dealings with Pellegrini's clients, the referee discounted this testimony. Dr. Carmouze admitted that he made this determination by referring to patient files, but that there would be no such files if he never actually treated the patients. Based upon our review of the record, we do not find the referee's findings on this count to be clearly erroneous or without support in the record.
Accordingly, we approve the referee's findings of fact and recommendations of guilt on all counts of the complaint and on the order to show cause.

DISCIPLINE
The referee recommends that Pellegrini be suspended from the practice of law for three years from the date of his report and thereafter until he proves rehabilitation. The parties stipulated that prior to institution of the actions at issue here, Pellegrini had never been the subject of a Bar investigation or disciplinary proceeding.[1]
The Bar asserts that disbarment is the only appropriate sanction in this case, citing standard 4.11, Florida Standards for Imposing Lawyer Sanctions ("Disbarment is appropriate when a lawyer intentionally or knowingly converts client property regardless of injury or potential injury."). The Bar claims that given the severity of the misconduct and the lack of substantial mitigation, there is no basis to deviate from the presumptive sanction of disbarment.
Although a referee's recommended discipline is persuasive, this Court has the ultimate responsibility to determine the appropriate sanction. See Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994); Florida Bar v. Pearce, 631 So.2d 1092, 1093 (Fla.1994). As we explained in Lecznar, "[W]e will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw." 690 So.2d at 1288.
"This Court has stated on numerous occasions that misuse of client funds is one of the most serious offenses a lawyer can commit." Florida Bar v. Farbstein, 570 So.2d 933, 936 (Fla.1990); see also, e.g., Florida Bar v. Schiller, 537 So.2d 992, 993 (Fla. 1989); Florida Bar v. Newman, 513 So.2d 656, 658 (Fla.1987). While misuse of client's funds gives rise to a presumption of disbarment, see Florida Bar v. Maynard, 672 So.2d 530, 540 (Fla.1996), this presumption can be overcome by mitigating factors. See Farbstein, 570 So.2d at 936.
*453 The cases the Bar relies on in support of disbarment are distinguishable. The attorney disbarred in Florida Bar v. Palmer, 588 So.2d 234 (Fla.1991), in addition to receiving payment for services not performed and having a trust account substantially and frequently out of balance, had also been convicted of felonies of unlawful possession of cocaine and theft of client funds. In Florida Bar v. McKenzie, 581 So.2d 53 (Fla.1991), we disbarred the attorney based on his total conduct in the incident, including the submission of false testimony before the referee and his three prior disciplinary infractions.
While not condoning Pellegrini's conduct in any way, we find that it does not rise to the level of the misconduct in Florida Bar v. Benchimol, 681 So.2d 663 (Fla.1996), and Florida Bar v. Simring, 612 So.2d 561 (Fla. 1993). In Simring, the attorney wrote checks on his trust account totaling more that $19,000 to pay for personal and office expenses. His trust account balance had a shortage of approximately $68,000. In Benchimol, the attorney misappropriated $10,000 of funds belonging to his former law firm and his clients. In addition, that case involved aggravating factors not present in this case.
Although the Bar claims that Pelligrini was engaged in a scheme of misappropriation of funds from a number of clients, the referee found only two such instances. The referee found Pellegrini not guilty of count IV, which, if proved, would have established a scheme to defraud. In at least one of the cases in which Pellegrini misappropriated funds, he repaid the monies in full after the Bar began its investigation. In addition, we consider that Pelligrini has no prior disciplinary history and admitted to several of the trust account violations.
"A bar disciplinary action must serve three purposes: the judgment must be fair to society, it must be fair to the attorney, and it must be severe enough to deter other attorneys from similar misconduct." Florida Bar v. Lawless, 640 So.2d 1098, 1100 (Fla. 1994). The punishment imposed on Pellegrini, which amounts to a cumulative five-year suspension, fulfills that purpose.[2] Because the referee was in the best position to assess both the guilt and the punishment, based on the totality of the circumstances in this case we decline to overturn the referee's recommendation.
Accordingly, Santiago Pellegrini is hereby suspended from the practice of law for three years from the date of the referee's amended report, July 18, 1997, and thereafter until Pellegrini proves rehabilitation as provided in rule 3-5.1(e), Rules Regulating the Florida Bar. The three-year suspension shall be in addition to the two-year suspension imposed by this Court's emergency order of August 9, 1995, in case number 86,189. In addition, because of the length of the cumulative suspension, we further direct that Pellegrini be required to take the Florida Bar examination pursuant to rule 3-5.1(e) prior to being authorized to practice law again.
We also enter judgment against Pellegrini in favor of the Florida Bar for costs in the amount of $25,481.58, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Pellegrini was admitted to The Florida Bar in 1987.
[2] The respondent does not contest the recommended discipline of three years' suspension coupled with his previous two-year emergency suspension.